UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS BRYANT and
DEBORAH COOK,                                    Case No. 2:22-cv-12815

                              Plaintiffs,        HONORABLE STEPHEN J. MURPHY, III

v.

MACOMB COUNTY, et al.,

                              Defendants.
_____/

## <u>OMNIBUS OPINION AND ORDER</u>

Plaintiff Darrius Bryant[1] sued Defendants Macomb County, Deputy Sheriff Mitchell Blount, and Deputy Sheriff Rebecca Jeruzal under 42 U.S.C. § 1983 for violating his Fourth, Eighth, and Fourteenth Amendment rights, false arrest, false imprisonment, and malicious prosecution. ECF 1. After Defendants answered, ECF 4, the Court held a scheduling conference and issued a scheduling order, ECF 8. Less than one month later, Defendants separately moved for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF 9; 10. The parties briefed the motions. ECF 13; 14; 17; 18. Plaintiff also moved to strike the motion filed by Defendants Macomb County and Blount. ECF 15. Defendants responded. ECF 16. For the reasons below, the Court will deny the motion to strike by Plaintiff, ECF 15;

---

[1] Plaintiff Bryant's co-Plaintiff is Deborah Cook, who is "Plaintiff's Legal Guardian and Next Friend." ECF 1, PgID 25. For simplicity, the Court's reference to "Plaintiff" in this opinion and order refers only to Plaintiff Bryant.

grant the Rule 12(c) motion by Defendants Macomb County and Blount, ECF 9; and grant the Rule 12(c) motion by Defendant Jeruzal, ECF 10.[2]

## BACKGROUND[3]

In November 2019 around 10:00 p.m., Taylor Davis called 911 to report a suspected vehicle break-in. ECF 1, PgID 4; ECF 9, PgID 92. She provided her name to the 911 operator and gave a contemporaneous account of what she observed. ECF 1, PgID 4. During the 911 call, Ms. Davis explained that she saw a Jeep that appeared to have been "busted out" and a man running back and forth near the car. ECF 9, PgID 92 (quoting 911 call). She stated that she thought the man may have broken into the car. *Id.* (same). While on the line, Ms. Davis stated that the man running near the car was a black male and that he was wearing khakis and a dark gray jacket. *Id.* (same). She then described his conduct. He had crossed a multi-lane street, away from the Jeep, and into a parking lot. She described him going up to a parked car and then pacing around the lot. *Id.* at 92–93 (same). Based on his "strange" behavior, she stated that she believed "something [was] wrong" because "no one just stands in a parking lot." *Id.* at 93 (same).

During the 911 call, dispatch radioed: "Macomb cars, be advised in front of the trailer park on Hall and Trinity, there's a [J]eep at the entrance with a male looking into vehicle windows." *Id.* (quoting body camera video). Defendant Blount responded

---

[2] Based on the briefing of the parties, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).
[3] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. N.C.A.A.*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

to the call and was told that a 911 caller "believe[d] that the jeep was broken into on the Macomb side." *Id.* at 94 (same). The dispatcher provided the khakis-and-gray-hoodie description of Plaintiff, and Defendant Blount located Plaintiff, who was in the parking lot and wearing clothing matching the description. *Id.* (same).

Defendant Blount then approached Plaintiff. *Id.* He told Plaintiff to put his hands behind his back, but Plaintiff did not comply for approximately twenty seconds. ECF 9-4,[4] Blount body camera video at 5:23–5:44. During that time, Plaintiff stated, "I'm not putting my hands behind my back." *Id.* at 5:30. Defendant Blount warned Plaintiff, "Do not make me take you to the ground," *id.* at 5:32–36, but Plaintiff continued to disobey Defendant Blount's orders. Plaintiff also "flexed his right arm and brought his right hand up towards his chest" when Defendant Blount grabbed his arm. ECF 9-9, PgID 128. Consequently, Defendant Blount tackled Plaintiff to the ground. Plaintiff made no sounds of pain and talked throughout the time he was being taken to the ground by Defendant Blount. ECF 9-4, Blount body camera video at 5:45–5:50.

After Plaintiff was on the ground, he continued to actively resist Defendant Blount's attempts to subdue and handcuff him. *Id.* at 5:44–9:01. Plaintiff ignored the twenty-five commands by Defendant Blount to put his hands behind his back. ECF 9, PgID 96 (quoting body camera video). Plaintiff shouted, "Get off me!" seventy-nine times. *Id.* (same) He even tried to escape from Defendant Blount three times. *Id.*

---

[4] ECF 9-4 is body camera video that Defendants Blount and Macomb County submitted as an exhibit to the motion for a judgment on the pleadings, ECF 9. Defendants filed the exhibit in the traditional manner.

at 96–97 (same). Backup that included Defendant Jeruzal then arrived. ECF 10-7,[5] Jeruzal body camera video at 3:01. During the arrest, Defendant Jeruzal rested her knees on Plaintiff's back. ECF 9-4, Blount body camera video at 9:52–10:06; ECF 10-7, Jeruzal body camera video at 3:08–23. And when Defendant Blount rolled Plaintiff over to search him after he had been handcuffed, Defendant Jeruzal slightly moved her knees. ECF 10-7, Jeruzal body camera video at 4:32–35. During the entire arrest, Plaintiff persistently struggled and shouted. *Id.* at 3:01–5:15.

## LEGAL STANDARD

The Court analyzes a Rule 12(c) motion for judgment on the pleadings with the same standard it would employ for a Rule 12(b)(6) motion to dismiss. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549–50 (6th Cir. 2008) (citation omitted). The Court accepts as true all well-pleaded material allegations of the pleadings and draws reasonable factual inferences in favor of the non-moving party, but "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). The complaint must "raise a right to relief above the speculative level, and [] state a claim to relief that is plausible on its face." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). It is not enough to offer mere "'labels and conclusions' or 'a formulaic recitation of the elements of a

---

[5] ECF 10-7 is body camera video that Defendant Jeruzal submitted as an exhibit to the motion for a judgment on the pleadings, ECF 10. Defendant filed the exhibit in the traditional manner.

cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted). But the Court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's [Rule 12(c) motion] so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Bassett*, 528 F.3d at 430. And when recorded evidence "utterly discredits" a plaintiff's version of events, the Court may "ignore the 'visible fiction' in [the] complaint." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Put another way, if the "pleadings internally contradict verifiable facts central to [the] claims, that makes [the] allegations implausible," and the Court may dismiss those claims. *Id.* at 387 (citations omitted).

## DISCUSSION

The Court will first deny the motion to strike ECF 9 by Plaintiff, ECF 15. After, the Court will grant the Rule 12(c) motions by Defendant Blount, ECF 9, and Defendant Jeruzal, ECF 10. Last, the Court will dismiss the *Monell* claims against Defendant Macomb County.

5

I.      <u>Motion to Strike</u>

Plaintiff moved to strike the Rule 12(c) motion filed by Defendants Blount and Macomb County because it "consists of 36 pages (11 pages in excess of the amount allowed by [the local rules])." ECF 15, PgID 291. The Court will deny the motion because it misreads the local rules.

Under Local Rule 7.1(d)(3)(A), "[t]he *text* of a brief supporting a motion or response, including footnotes and signatures, may not exceed 25 pages. A person seeking to file a longer brief may apply ex parte in writing setting forth the reasons." (emphasis added). Defendants' brief is thirty-six pages, starting with the caption and first page of the motion and ending with the certificate of service. ECF 9, PgID 82–117. "The text of [the] brief supporting [Defendants'] motion," E.D. Mich. L.R. 7.1(d)(3)(A), however, starts with a "statement of material [and] irrefutable facts" and ends with the conclusion and signature of counsel. ECF 9, PgID 92–116. And that section of the filing is twenty-five pages long. Accordingly, the motion by Defendants Blount and Macomb County complies with the local rules, and there is no ground for the Court to strike it. The motion to strike is denied.

II.   <u>Defendant Blount</u>

Plaintiff alleged that Defendant Blount violated his constitutional right against false imprisonment, false arrest, excessive force,[6] malicious prosecution, and fabrication of evidence. ECF 1, PgID 15–23. The Court will address the claims in turn.

A.   *False Imprisonment*

Defendant Blount moved for a judgment on the pleadings on the false imprisonment claim against him because he "had a reasonable suspicion to conduct [a] *Terry* stop." ECF 9, PgID 99. For the reasons below, the Court will grant Defendant Blount a judgment on the pleadings on the claim.

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). "In evaluating the constitutionality of a *Terry* stop, [the Court must] engage in a two-part analysis of the reasonableness of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). First, the Court asks "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Id.* Second, if "the basis for the *Terry* stop was proper, then the Court determines whether the degree of intrusion was reasonably related in scope to the

---

[6] Plaintiff's response for the false imprisonment, false arrest, and excessive force claims was that "Defendant's claim of qualified immunity is premature and inapplicable." ECF 13, PgID 274. Plaintiff lodged no substantive argument for why he had properly pleaded those claims or why they should not be dismissed under Rule 12(c). *See id.* at 274–75.

situation at hand, which is judged by examining the reasonableness of the officials'
conduct given their suspicions and the surrounding circumstances." *Id.* (cleaned up).

### 1.    *Part one: reasonable suspicion*

Under the first part of the *Terry* stop test, the officer must have "a reasonable,
articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S.
119, 123 (2000) (citing *Terry*, 392 U.S. at 30). No single factor determines the
presence of reasonable suspicion. Rather, the determination is based on a fact-
specific, totality-of-the-circumstances test. *United States v. Cortez*, 449 U.S. 411, 417
(1981); *United States v. Harris*, 192 F.3d 580, 585 (6th Cir. 1999) ("The question of
what constitutes reasonable suspicion is heavily dependent on the facts of each case
and does not lend itself to precise categorizations within the case law."). The officer
"must be able to articulate something more than an inchoate and unparticularized
suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation marks
and quotation omitted). "Instead, the officer must be able to articulate some minimal
level of objective justification for making the stop." *United States v. Smith*, 594 F.3d
530, 537 (6th Cir. 2010) (quotation marks and quotation omitted).

Reasonable suspicion need not derive exclusively from knowledge of the officer
conducting the stop. Rather, reasonable suspicion is based on the collective
knowledge of the law enforcement officers involved. *United States v. Lyons*, 687 F.3d
754, 766 (6th Cir. 2012). The collective knowledge rule "recognizes the practical
reality that 'effective law enforcement cannot be conducted unless police officers can
act on directions and information transmitted by one officer to another.'" *Id.* (quoting

*United States v. Hensley*, 469 U.S. 221, 231 (1985)). "Whether conveyed by police bulletin or dispatch, direct communication or indirect communication, the collective knowledge doctrine may apply whenever a responding officer executes a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion." *Id.* (footnote and citations omitted). Rather than analyze the facts known to each officer, courts "impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." *Id.* (citations omitted). Facts known to dispatchers are part of law enforcement collective knowledge. *See Smoak v. Hall*, 460 F.3d 768, 780 (6th Cir. 2006) (upholding officer's stop of a vehicle based on a radio dispatch mentioning a "possible robbery" and describing the vehicle involved, because the dispatcher knew enough facts to create reasonable suspicion); *Dorsey v. Barber*, 517 F.3d 389, 397 (6th Cir. 2008) (holding that the dispatcher had sufficient information to justify reasonable suspicion when officers arrested two men who matched a description sent out via radio of two suspects involved in a vehicle theft).

The present case includes facts comparable to those in cases that the Sixth Circuit has found support a lawful stop based on reasonable suspicion. For instance, in *Smith*, police officers had reasonable suspicion to conduct a *Terry* stop on a man in "the very early hours of the morning" after they had received a silent 911 call from an apartment building located in a high-crime area. 594 F.3d at 533, 539. While the officers were entering the apartment building, the man tried to push past the officers

9

with his head down. *Id.* at 539. The man also gave "vague responses" to the officer's questions. *Id.* And in *United States v. Craig*, police officers had reasonable suspicion to stop two men in a hospital parking lot even though the informant "did not see [the men] do anything overtly illegal." 306 F. App'x 256, 261 (6th Cir. 2009). The informant, who was a hospital employee, believed that "their behavior did not 'look right,'" and she had a "'gut instinct' that something was amiss because the men were loitering near the employee lot." *Id.* at 257. "[S]he was aware that several vehicles had been stolen from the employee parking lots in the preceding year." *Id.* The employee also observed the men opening a toolbox in the trunk of their car and one of them tucking something under his shirt. *Id.* When police arrived at the hospital, the two men got into their car and took an evasive route out of the parking lot. *Id.* at 258.

Here, the officers had reasonable suspicion to stop Plaintiff under *Terry*. First, Defendant Blount was dispatched based on a 911 call from a non-anonymous caller, Taylor Davis, who gave a contemporaneous account of Plaintiff's conduct. ECF 9-2,[7] 911 audio at 1:08–7:51; *Craig*, 306 F. App'x at 260 ("Tips from identified citizens have a high indicia of reliability, in part because such witnesses risk adverse consequences for providing faulty information."). As part of her account, Ms. Davis explained that she observed Plaintiff walking from the scene of a damaged vehicle, across a divided highway outside of a crosswalk, and into a parking lot across the street. ECF 9-2, 911

---

[7] ECF 9-2 is audio from the 911 call that Defendants Blount and Macomb County submitted as an exhibit to the motion for a judgment on the pleadings, ECF 9. Defendants filed the exhibit in the traditional manner.

audio at 00:20–46, 1:07–22. Second, Dispatch told Defendant Blount that a man was looking into vehicle windows and that Ms. Davis had identified Plaintiff as the man whom she believed had broken into a Jeep. *Id.* at 01:58–2:09 ("I'm assuming he's the guy that broke into [the Jeep.]"), 03:23–40. Third, Plaintiff's clothing matched the description provided by Ms. Davis. ECF 9, PgID 83. Fourth, Plaintiff was loitering in a public parking lot late at night, which is abnormal conduct. *See United States v. Royal*, 523 F. App'x 377, 385 (6th Cir. 2013) ("[T]he time of day during which the suspicious activity occurs is a relevant, if not dispositive, factor for consideration.") (citations omitted). And Fifth, Ms. Davis was so concerned about Plaintiff's activity that she stayed near the scene until police arrived to investigate—a fact which dispatch and Defendant Blount knew. ECF 9-2, 911 audio at 7:55–8:21. Altogether, the totality of the circumstances show that Defendant Blount had "a reasonable, articulable suspicion that criminal activity [wa]s afoot." *Wardlow*, 528 U.S. at 123 (citing *Terry*, 392 U.S. at 30).

What is more, the events of the present case are distinguishable from cases in which officers *lacked* reasonable suspicion. In *United States v. Davis*, the police did not have reasonable suspicion to stop a man whom they saw outside a gas station that merely "looked nervous." 554 F. App'x 485, 489 (6th Cir. 2014). The man had a bulge in his pocket, put his hand in his pocket, and walked away from the police. *Id.* Yet his conduct was "innocuous and [did] not indicate that a crime has or is going to take place." *Id.* In contrast, the 911 caller in the present case observed the suspect for several minutes and contemporaneously relayed his actions to the police. ECF 9-

11

2, 911 audio at 1:08–7:51. During that time, Ms. Davis told the police that she believed Plaintiff had already committed a crime (breaking into the Jeep) and that he might commit more break-ins based on his abnormal behavior of walking around a parking lot at night. *Id.* at 1:58–2:10, 3:25–40. In sum, the conduct of Plaintiff, as observed and relayed by the known, identified 911 caller, did not appear "innocuous" like that of the suspect in *Davis*.

Likewise, in *United States v. See* an officer lacked reasonable suspicion to conduct an investigatory stop based on his observation of three men sitting in a car with no lights on. 574 F.3d 309, 313–14 (6th Cir. 2009). Although the observation occurred in the early hours of the morning and in a high-crime area, and although the car was parked in a dark corner of the parking lot and had no front license plate, the officer "was not acting on a tip, he had not seen the men do anything suspicious, and the men did not try to flee upon seeing [the officer] approach." *Id.* at 314. Here, Plaintiff was not in a car but was instead walking around cars that did not belong to him. ECF 9-2, 911 audio at 1:58–2:10, 3:25–40. And Defendant Blount investigated Plaintiff based on the information from a 911 caller who tied Plaintiff to a suspected vehicle break-in. *Id.* In sum, the present case is easily distinguishable from Sixth Circuit cases in which officers *lacked* reasonable suspicion. Thus, the *Terry* stop here was supported by reasonable suspicion.

> 2.    *Part two: degree of intrusion*

As explained above, the second prong of the *Terry* stop analysis requires the Court to determine "whether the degree of intrusion . . . was reasonably related in

scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Davis*, 430 F.3d at 354 (quotation omitted). To "ascertain whether the detention is reasonable," the Court must determine whether the detention "(1) was [] sufficiently limited in time, and" whether "(2) the investigative means used [were] the least intrusive means reasonably available." *Id.* (quotation omitted).

When a suspect may be armed and dangerous, officers may put the suspect in handcuffs to ensure their own safety. The use of handcuffs does not "exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution." *Houston v. Does*, 174 F.3d 809, 815 (6th Cir. 1999); *see also United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001) ("We have uniformly found that the use of force must be necessary to protect officers from potentially dangerous situations."). Indeed, handcuffing a suspect is "appropriate even when police are merely detaining, but not arresting, a suspect." *United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (citing *Houston*, 174 F.3d at 814). But officers may not use handcuffs as a matter of course during an investigatory stop; they must have further justification. *United States v. Vining*, No. 2:21-CR-20715, 2023 WL 3720911, at *7 (E.D. Mich. May 30, 2023) (finding that the officers' explanation that "the purpose of handcuffing was '[t]o detain' Defendant because the officers 'believed that crime was afoot'" was insufficient).

Here, Defendant Blount conducted a *Terry* stop after he was informed that Plaintiff was "looking into vehicle windows" and that a "Jeep was broken into." ECF

9, PgID 94–95 (quoting 911 call). Crimes like car theft and vehicle break-ins, both of which are consistent with Plaintiff's suspicious activity, often involve the use of weapons, tools, or other instruments that could be used as a means of violence or escape. *See Royal*, 523 F. App'x at 385; *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019); *see also United States v. Powell*, 210 F.3d 373 (Table), 2000 WL 357262, at *6 (6th Cir. 2000) (collecting cases for the proposition that "courts have repeatedly held that when an officer reasonably believes that a suspect is armed, he may—among other things—handcuff the suspect"). Simply put, it was reasonable for Defendant Blount to suspect that Plaintiff was armed and dangerous based on the tip he had received that Plaintiff had broken into a car.[8] And he could not search Plaintiff until Plaintiff was placed in handcuffs. As a result, Defendant Blount was justified in ordering Plaintiff to put his hands behind his back to place him in handcuffs during the investigatory stop.

In sum, Defendant Blount had reasonable suspicion that crime was afoot when he approached Plaintiff in the parking lot, and the degree of intrusion during the stop was reasonably related in scope and type to the crimes that Plaintiff was suspected of committing. *See Davis*, 430 F.3d at 354. The false imprisonment claim against Defendant Blount therefore fails.

---

[8] Moreover, Officer Blount corroborated some parts of the tip, such as how Plaintiff was dressed and where Plaintiff was located, which adds to the reasonableness of suspecting that Plaintiff had, in fact, broken into the parked car and was armed with a weapon or tool.

B.    *False Arrest*

Defendant Blount moved for a judgment on the pleadings on the false arrest claim against him because he had "probable cause to arrest [Plaintiff] when he refused to comply with lawful orders and then resisted arrest." ECF 9, PgID 99. For the reasons below, the Court will grant Defendant Blount a judgment on the pleadings on the claim.

An officer must have probable cause to make a lawful arrest. And "[a] false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted). "An officer possesses probable cause when, at the moment the officer seeks the arrest, the facts and circumstances within [the officer's] knowledge and of which [she] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause is not a high bar." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (cleaned up).

Defendant Blount tried to ensure his own safety by asking Plaintiff to put his hands behind his back during the investigatory stop. Yet Plaintiff did not comply for twenty seconds. ECF 9-4, Blount body camera video at 5:23–5:44. During that time, Plaintiff stated, "I'm not putting my hands behind my back." *Id.* at 5:30. Defendant Blount warned Plaintiff, "Do not make me take you to the ground," *id.* at 5:32–36, but Plaintiff continued to disobey Defendant Blount's orders. Put simply, Plaintiff's

conduct was a "knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a). And under Michigan Compiled Laws section 750.81d(1), "an individual who . . . resists, obstructs, opposes, or endangers a [police officer] who the individual knows or has reason to know is performing his or her duties is guilty of a felony[.]" Plaintiff was clearly "committing an offense," *Wesley*, 779 F.3d at 429, by disregarding the lawful command of Defendant Blount to put his hands behind his back.[9] Defendant Blount therefore had probable cause to arrest Plaintiff for violating State law. The false arrest claim against Defendant Blount fails.

### C.    *Excessive Force*

"[T]he Fourth Amendment [] protects individuals from the use of excessive force during an arrest or investigatory stop." *Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). But "[w]hen a person resists arrest—say, by swinging his arms in the officer's direction, balling up, and refusing to comply with verbal commands—the officers can use the amount of force necessary to ensure submission." *Jarvela v. Washtenaw Cnty.*, 40 F.4th 761, 765–66 (6th Cir. 2022) (quotation omitted). "Active resistance includes physically struggling with, threatening, or disobeying officers. And it includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (internal

---

[9] In Michigan, there is a "common-law right to resist *unlawful* arrests or other unlawful invasions of private rights." *People v. Moreno*, 491 Mich. 38, 58 (2012). But, for the reasons explained above, Defendant Blount could lawfully place handcuffs on Plaintiff during the investigatory stop. *See Houston*, 174 F.3d at 815. Plaintiff therefore had no right to resist being placed in handcuffs.

quotation and citation omitted). To determine whether use of force was reasonable within the meaning of the Fourth Amendment, the Court must look to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). "These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (quotation omitted).

In the Sixth Circuit, "takedown maneuvers are excessive when officers deal with a 'generally compliant' suspect, and [] the police may not use physical force against a subdued, non-resisting subject." *Parsons v. City of Ann Arbor*, No. 22-1338, 2023 WL 3413898, at *3 (6th Cir. May 12, 2023) (quoting *LaPlante v. City of Battle Creek*, 30 F.4th 572, 583 (6th Cir. 2022)). "Takedown maneuvers are also excessive when a suspect surrenders to the police, does not offer resistance, or when the interaction happens in the presence of multiple officers." *Id.* (cleaned up).

Defendant Blount's actions were justified because Plaintiff was resisting arrest. Plaintiff repeatedly refused to comply with Defendant Blount's commands to put his hands behind his back ECF 9-4, Blount body camera video at 5:30 ("I'm not putting my hands behind my back."). Plaintiff also "flexed his right arm and brought his right hand up towards his chest" as an act of resistance when Defendant Blount grabbed his arm. ECF 9-9, PgID 128. In sum, Plaintiff was not "generally compliant."

17

*Parsons*, 2023 WL 3413898, at *3. Plaintiff was therefore actively resisting arrest. *See Rudlaff*, 791 F.3d at 641.

What is more, Defendant Blount was the only officer on the scene when he took Plaintiff to the ground. And Defendant Blount even warned Plaintiff that he would take Plaintiff to the ground if he continued to flout his orders. ECF 9-4, Blount body camera video at 5:32–36. Plus, Defendant Blount was investigating Plaintiff for a suspected carjacking or car break-in, which could have been carried out through violence or using weapons. Defendant Blount therefore did not apply excessive force on Plaintiff when he took him to the ground after about twenty seconds of commanding and warning Plaintiff to comply. *See Graham*, 490 U.S. at 396; *Parsons*, 2023 WL 3413898, at *3. Plus, in the audio from the body camera footage of the takedown,[10] Plaintiff talked throughout the time he was being taken to the ground by Defendant Blount. ECF 9-4, Blount body camera video at 5:45–5:50. The fact that Plaintiff could continue speaking throughout the takedown and arrest suggests that "the amount of force" Defendant Blount used during the takedown was not more than "necessary to ensure submission." *Jarvela*, 40 F.4th at 766.

Defendant Blount also conducted himself in a reasonable fashion after Plaintiff was on the ground. Indeed, Plaintiff continued to actively resist Defendant Blount's attempts to subdue and handcuff him. ECF 9-4, Blount body camera video at 5:44–9:00. Plaintiff ignored the twenty-five commands by Defendant Blount to put his

---

[10] The body camera footage provides only an audio account of the takedown because Defendant Blount's jacket covers the camera for the first portion of the video.

hands behind his back. ECF 9, PgID 96 (quoting body camera video). Plaintiff shouted, "Get off me!" seventy-nine times. *Id.* (same) He tried to escape from Defendant Blount three times. *Id.* at 96–97 (same). Defendant Blount was therefore required to continue to use force to restrain and control Plaintiff. *See Jarvela*, 40 F.4th at 766. And the amount of force that he used—merely holding Plaintiff in place on his side—was proportional to the need to keep Plaintiff secure until backup arrived. *See id.*; ECF 9-4 Blount body camera video at 5:50–9:00. The Court will accordingly find that the force Defendant Blount used to secure Plaintiff before, during, and after the takedown was not excessive. Plaintiff's excessive force claim is therefore dismissed.[11]

### D.   *Malicious Prosecution and Fabrication of Evidence*

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625

---

[11] Plaintiff also alleged in his complaint that "an officer stood on his leg for a lengthy period of time and for no apparent reason other than to cause pain and/or demean Plaintiff[.]" ECF 1, PgID 6. From the video evidence submitted by Defendants, Plaintiff may be referencing the actions of non-party Clinton Township Officer Smith. *See* ECF 10, PgID 174. Officer Smith did not use excessive force. Officer Smith can be seen on Defendant Jeruzal's body camera. The footage reveals that Officer Smith only straddles Plaintiff's legs as he kneels. ECF 10-7, Jeruzal body camera video at 3:07–4:09. The evidence therefore contradicts the complaint allegation. *See* ECF 1, PgID 6. But even if Officer Smith applied any pressure on Plaintiff's legs during the struggle, the force was used to constrain the continuous struggling movements of Plaintiff and to complete the arrest. *See Jarvela*, 40 F.4th at 766. Because Officer Smith did not use excessive force on Plaintiff, the named Defendants had no reason to intervene.

19

F.3d 294, 308 (6th Cir. 2010) (cleaned up). A malicious prosecution claim has four

elements:

> "First, the plaintiff must show that a criminal prosecution was initiated
> against the plaintiff and that the defendant made, influenced, or participated
> in the decision to prosecute. Second the plaintiff must show that there was a
> lack of probable cause for the criminal prosecution. Third, the plaintiff must
> show that, as a consequence of a legal proceeding, the plaintiff suffered a
> deprivation of liberty, as understood in our Fourth Amendment jurisprudence,
> apart from the initial seizure. Fourth, the criminal proceeding must have been
> resolved in the plaintiff's favor.

*Id.* at 308–09 (cleaned up).

The first, third, and fourth elements are all present. Defendant Blount

influenced the decision to prosecute by arresting Plaintiff; Plaintiff suffered a

deprivation of liberty when he was arrested and held for two days, ECF 1, PgID 7;

and the criminal proceeding eventually resolved in his favor, *see* ECF 9, PgID 112–

15 (preliminary examination transcript excerpt). Still, Plaintiff has not plausibly

shown that there was a lack of probable cause for the prosecution. As articulated

above, Defendant Blount had reasonable suspicion to stop Plaintiff and probable

cause to arrest him. To succeed on his malicious prosecution claim, Plaintiff must

show that there was no probable cause to "initiate the criminal proceeding against

[him]." *Sykes*, 625 F.3d at 310–11. Since there was probable cause to arrest Plaintiff,

and no later-discovered facts changed the circumstances of the arrest, there was

probable cause to prosecute Plaintiff. Without one of the four requisite elements of

malicious prosecution, the claim cannot stand and must be dismissed.

Plaintiff also argued that Defendant Blount falsified elements of the police

report. But the complaint failed to "identify *any* specific instances of [Defendant]

presenting false testimony, fabricating evidence, making misleading statements, or omitting exculpatory information." *Allen v. Rucker*, 304 F. Supp. 3d 638, 646 (E.D. Ky. 2018). To survive a motion for a judgment on the pleadings, Plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff alleged only that Defendants "willfully or inadvertently falsified the police complaint reports." ECF 1, PgID 22. The complaint thus raised only a "vague and conclusory assertion[]" about falsified evidence. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (quotation omitted). In the end, Plaintiff did "not nudge[] [his] claim[] across the line from conceivable to plausible," so the claim "must be dismissed." *Twombly*, 550 U.S. at 570.

III.   <u>Defendant Jeruzal</u>

Plaintiff brought the same claims against Defendant Jeruzal as he brought against Defendant Blount: False arrest, false imprisonment, excessive force, malicious prosecution, and fabrication of evidence. ECF 1, PgID 10–12, 15–23. The Court will resolve each claim in order.

A.   *False Arrest and False Imprisonment*

Plaintiff claimed that during his arrest, "additional Defendant Sheriffs who arrived at the scene did nothing to prevent Defendant Blount from assaulting, battering, detaining, handcuffing, and arresting the Plaintiff and instead, assisted him in doing so." ECF 1, PgID 6 (alterations omitted). Plaintiff contended that the officers did not "attempt to intervene" or "arrest Defendant Blount for his acts against Plaintiff." *Id.* (alterations omitted). The complaint therefore suggested that Plaintiff

believed Defendant Jeruzal should have known that the stop and arrest were unlawful and that she should intervened between Plaintiff and her fellow officer even though she arrived on the scene minutes after the struggle had begun.

But Officer Jeruzal was not required to question Officer Blount to determine whether the *Terry* stop and the arrest violated Plaintiff's Fourth Amendment rights in the midst of the struggle. "Clearly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action . . . from assuming that proper procedures, such as officer identification, have already been followed. No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers." *White v. Pauly*, 580 U.S. 73, 80 (2017). Defendant Jeruzal is therefore not liable for false arrest or false imprisonment because she could rely on Defendant Blount, a fellow officer, to conduct the stop and arrest according to the law. The Court will therefore dismiss the false arrest and false imprisonment claims.

B.    *Excessive Force*

Plaintiff also alleged that Defendant Jeruzal used excessive force during the arrest. To be sure, Defendant Jeruzal rested her knees on Plaintiff's back to hold Plaintiff down on the ground. ECF 9-4, Blount body camera video at 9:52–10:06; ECF 10-7, Jeruzal body camera video at 3:08–23. But when Defendant Blount rolled Plaintiff over to search him after he had been handcuffed, Defendant Jeruzal only slightly moved her knees, which suggests she was applying light pressure to the edge of Plaintiff's back. ECF 10-7, Jeruzal body camera video at 4:32–35. Moreover,

Plaintiff persistently struggled and shouted during the entire arrest, including after Defendant Jeruzal arrived on the scene. *Id.* at 3:01–5:15. Her arrival, and any physical pressure she applied to Plaintiff, therefore did not appear to have limited Plaintiff's ability to speak or resist arrest. Accordingly, the force that Defendant Jeruzal used to help Defendant Blount secure and constrain Plaintiff was not excessive and was in fact necessary to complete the arrest. *See Graham*, 490 U.S. at 396; *Parsons*, 2023 WL 3413898, at *3. The excessive force claim against Defendant Jeruzal therefore fails.[12]

### C.   *Malicious Prosecution and Fabrication of Evidence*

Plaintiff's malicious prosecution claim against Defendant Jeruzal must also be dismissed. After all, Defendant Jeruzal did not initiate the *Terry* stop or the arrest, and she did not write the police report. ECF 9-9, PgID 127–33. And Defendant Jeruzal appeared to have no other influence over the decision to prosecute Plaintiff. Even so, and as established above, a malicious prosecution claim requires a showing that the officials involved lacked probable cause to prosecute. *Sykes*, 625 F.3d at 308. Probable cause existed for both the arrest and, in turn, the prosecution of Plaintiff on a charge

---

[12] After Defendant Jeruzal arrived on the scene, the only other force used against Plaintiff was the force used by Defendant Blount and Officer Smith. *See* ECF 10-7, Jeruzal body camera video at 3:01–5:15. Because the Court found that no excessive force was used by either Defendant Blount or Officer Smith, Defendant Jeruzal did not observe any conduct that would have required intervention. On that basis, the claim that Defendant Jeruzal failed to intervene must be dismissed as well.

of resisting and obstructing. ECF 9-9, PgID 130. The claim of malicious prosecution thus fails.

Plaintiff also alleged that Defendant Jeruzal fabricated evidence and deliberately concealed fabricated evidence. ECF 1, PgID 20. The claim fails for the same reason that it failed against Defendant Blount: the complaint failed to point to a specific instance of fabricated or concealed evidence. *Allen*, 304 F. Supp. 3d at 646. That is, "Plaintiff [did] not identify *any* specific instances of [Defendant] presenting false testimony, fabricating evidence, making misleading statements, or omitting exculpatory information." *Id.* The Court will therefore dismiss the claim.

## IV.   Macomb County

Last, Plaintiff sued Macomb County under a *Monell* theory of liability. ECF 1, PgID 12–15. But "there can be no liability under *Monell* without an underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (cleaned up). The fact "that no officer-[D]efendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well." *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000). For the reasons explained above, the claims of constitutional violations against Defendants Blount and Jeruzal must be

dismissed under Rule 12(c). And with no underlying constitutional violation, the *Monell* claims against Macomb County must also be dismissed.

## CONCLUSION

Plaintiff's motion to strike ECF 9 will be denied under Local Rule 7.1(d)(3)(A). And the Court will grant the motions for judgment on the pleadings by Defendants Blount and Macomb County and by Defendant Jeruzal.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to strike [15] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings by Defendants Mitchell Blount and Macomb County [9] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings by Defendant Rebecca Jeruzal [10] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 11, 2023